JOHN F. DALY
*vs.*
JOSEPH DUBITZKY

Court of Common Pleas    Hartford County    File No. 38734

MEMORANDUM FILED FEBRUARY 13, 1941.

*Kimberly Cheney,* of Hartford, for the Plaintiff.

*Levi P. M. Hickey,* and *Harry H. Kleinman,* of Hartford, for the Defendant.

MOLLOY, J.  In this action a real estate broker seeks to recover a commission on the ground that he procured a person ready, able and willing to loan money to the defendant on his property in the Town of East Hartford.  The evidence is clear that the defendant requested the plaintiff to secure such a loan, and that they discussed the matter of commission, which the plaintiff informed the defendant would be three per cent.  It is further clear that in pursuance of his agency, the plaintiff established a contact with one Louis Joseloft, of Hartford, who occasionally loans money.  As a result of the plaintiff's efforts, the defendant and Joseloff carried on negotiations which finally culminated in an agreement, Exhibit A, dated August 24, 1937, which was signed by the defendant and Joseloff.  This agreement set out specifically the terms and conditions upon which Joseloff, the lender, would loan money to the defendant.

The defendant was desirous of erecting a building on the land in question in East Hartford.  He was the title holder thereof.  The agreement, which recited that it was between Joseloff, the defendant and his wife, stated, among other things, that whereas Joseloff was willing to make the loan to Joseph Dubitzky, the defendant, that in consideration of the promises of the parties, Joseloff agreed to loan to Joseph Dubitzky and his wife, Gertrude Dubitzky, and that the loan

should be evidenced by a negotiable promissory note signed by the defendant and his wife, Gertrude Dubitzky, as co-makers. It then set out the terms of payment to be incorporated in the proposed mortgage and note. Further terms and conditions of the loan, with which we are not presently concerned, were then set forth. The agreement was very specific in laying down the conditions upon which the loan would be made. The note therefore was to be signed and executed by the defendant and his wife. The evidence is convincing that in keeping with this condition, the defendant agreed to get his wife to sign the agreement. Whatever the reason was, the wife refused to sign, and the loan as a consequence was never made. Subsequently the defendant and Joseloff executed a mutual release of one another.

The plaintiff now claims that inasmuch as the defendant and Joseloff agreed upon the terms of the loan he has earned his commission irrespective of the fact that the wife failed to sign and enter into the terms of the agreement. The defendant's principal contention is that the plaintiff failed to procure a person ready, willing and able to make the loan to the defendant.

The answer to this question depends upon the further question whether or not under the circumstances the plaintiff is entitled to recovery even though one of the conditions of the loan laid down by the lender and agreed to by the defendant was unable of fulfillment by the defendant. In other words, the question may be summarized thus: Is the agent entitled to his commission when the lender agrees to loan money, but on a condition that it shall be done upon the seeker of the loan and his wife executing as evidence of the loan a negotiable promissory note as co-makers, which act was never agreed to be done by the defendant's wife? To express it another way, the lender says: "I will loan the desired sum of money, but the loan must be to you and your wife, and not to you alone, and both of you must agree to sign and execute the note evidencing the loan, and agree to the other terms contained in such proposed note." That is the question, put simply and definitely.

Now, the trend of the plaintiff's argument is this: That Joseloff was ready, able and willing to proceed as called for in the agreement, Exhibit A, provided the defendant secured the signature of his wife, Gertrude Dubitzky; that the defendant

agreed to secure the doing of this act; and that upon the signing of the agreement, Exhibit A, by the defendant alone, then and there liability attached to the defendant for the commission. The plaintiff argues further that this is so because the duties and obligations under the agreement were really those of the defendant and not Mrs. Dubitzky, his wife; that when the deal fell through, a mutual release was executed between Joseloff and the defendant only; and that failure to secure the wife's signature to the agreement was like unto the defendant's failure to comply with other terms of the agreement, such, for instance, as actually spending the amount of the loan on the premises and constructing the building. The argument of the defendant is that Joseloff was neither willing nor ready to loan the money unless the condition precedent of the wife's signature was fulfilled.

This reasoning, however, seems to the court to overlook the fundamental condition of the agreement; namely, that Joseloff would loan the money but on a condition that the loan was made to Dubitzky and his wife and that he and his wife should agree to sign and execute a negotiable promissory note as co-makers. This the wife would not do; therefore, one of the terms upon which the loan would be made was not complied with. In other words, Dubitzky would get the money but on Joseloff's terms, and until those terms were met, namely, until Mrs. Dubitzky agreed to sign, there would be no loan.

It is hardly necessary to refer to the many cases setting forth the law as to when a real estate broker has earned his commission. One case cited by both parties is *Westbrook vs. Times-Star Co.,* 122 Conn. 473, wherein the court said (at p. 480): "In determining whether or not a broker is entitled to a commission, his 'services are not the test, but rather the success of his effort in effecting a sale, or in producing a customer ready, able and willing to buy on the owner's terms.' *Rosenfield vs. Wall,* 94 Conn. 418, 422, 109 Atl. 409 . . . . The plaintiff 'must prove, either that the owner had prescribed the terms upon which he would sell, and that the plaintiff had produced a customer ready, able and willing to buy upon those terms, or that the customer and owner had reached an agreement as to terms of sale, and the customer was able to buy upon those terms. Proof of either set of facts is sufficient for the plaintiff's case.' "

The *Rosenfield vs. Wall* case noted in this citation is an-

other informative case on this question. The court said, on page 421 of that case: "The finding of a prospective purchaser is not the only service of the broker. A large part of his effort, perhaps the greater part, is in inducing either the purchaser to meet the seller's terms and price, or the seller to make concessions in the terms to meet the purchaser's wishes." *See, also, Lawrence vs. Hamilton,* 111 Conn. 493, 495; *Wright vs. Reid,* id. 141.

The instant case is a bit more complicated than the average real estate commission case. The defendant sought a loan, which is analagous to the situation where a man seeks to buy some property. The lender was willing to make the loan, a position analagous to that of a seller who will sell on his terms. In other words, the lender, Joseloff, will loan, provided his terms are met, the first one of which is that the loan will be made provided Mrs. Dubitzky will sign and execute the agreement, Exhibit A, agreeing to sign and execute a negotiable promissory note as co-maker with her husband, the defendant.

In *Lawlor vs. Cornelis,* 100 Conn. 680, the defendant seller submitted certain terms and conditions which were to be fulfilled before the transfer could be made. Among these conditions was one that the seller's wife should approve of the transfer. The court stated to the jury in that part of the charge which was approved, that if they found such a condition, then the plaintiff broker could not recover.

In *Kost vs. Riley,* 62 Conn. 57, wherein the agreement of sale provided that: "If no license should be granted there will be no sale", the court said (pp. 60, 61): "If the parties have provided for a delivery at a future time, or if by the terms of the agreement there is anything to be done by either party in the nature of a *condition precedent,* they thereby manifest their intention that the title shall not pass until such delivery *or until the condition precedent has been fulfilled....A* license was absolutely necessary....The parties understood this and *the agreement provides for it.* The defendant guarantees that a license will be granted, as application was on file, and 'if no license should be granted' there was to be 'no sale.' *This provision can be read in no other way than as a condition precedent.* It is that in case no license is granted there should be *no sale.* Not that a sale already made shall be avoided, or that a title already passed shall revest." (Italics added, in part.)

*Maier vs. Romano,* 102 Conn. 556, is another case wherein a condition to a transfer was laid down and not complied with.

In *Hancock Co., Inc. vs. Poli Corporation,* 113 Conn. 545, the court said (p. 552): "If, in placing the property in the agent's hands for sale, the owner has not fixed the terms upon which he will sell, the agent has not earned his commission unless and until the customer he produces has reached an agreement with the owner as to the terms of sale."

To the same effect is the law in *Commander vs. Lawler,* 94 Conn. 125, wherein the court stated (at p. 126), that the agent's "right to . . . . commission is dependent upon the concurrence of two conditions: (1) the creation either expressly or impliedly of an agency employment to effect a sale, and (2) the execution of the terms of the employment to the extent of procuring a customer ready, willing and able to buy *upon the terms prescribed by the owner."* (Italics added.)

In *Amies vs. Wesnofske,* 255 N.Y. 156, wherein the defendant promised to pay the plaintiff a commission upon the closing of title, the court held that a promise to pay a real estate broker commission for procuring a purchaser "on the closing of title" is not simply a promise to pay on the day fixed by the contract of sale for the closing of title but is *conditional on the event itself.*

Another appropriate case is *Halprin vs. Schachne,* 21 Misc. 519, 47 N.Y.S. 711, affirmed 25 Misc. 797, 54 N.Y.S. 1103, wherein the terms of sale were agreed upon but the contract of sale made its execution conditional upon the approval of an attorney who did not approve. In denying the broker a commission, the court said: "This shows that in law this agreement is made upon a condition, and is dependent upon the performance of that condition, and if the condition is not complied with, no obligation thereunder arises and no rights thereunder attach.

"The rule of law is that a broker is entitled to his commission when the minds of the parties have met on every material particular of the transaction. Here, in this case, however, the minds of the parties in regard to the transaction have never met, because the validity of the contract was made dependent upon the condition that the defendants' attorney approve of the contract. The defendants' attorney never approved of the contract.

"In that event the contract and the whole transaction was

to be null and void to the same effect as if no transaction whatsoever had been agreed upon and entered into between the parties.

"For that reason the condition upon which the broker's commission depended and which entitled him in law to recover was never fulfilled, and he is not entitled to recover."

A similar case is *Watson vs. Odell,* 58 Utah 276, 198 Pac. 772, wherein the agreement between the seller and buyer called for its final execution and completion upon the following condition: "in form satisfactory to the legal firm of Story & Steigmeyer....expressed in writing." The seller and buyer agreed on all the terms but the attorneys refused to approve the contract. In denying a commission, the court said (at p. 289 of 58 Utah): "Being dependent on the approval of the attorneys for the third parties to the contract, the triparty agreement was only tentative and conditional. It was not binding on the parties and was not carried into effect. The execution of such a contract does not give to the broker a right to compensation."

To the same effect is the law stated in *Nagl vs. Small,* 159 Iowa 387, 138 N.W. 849, that a broker employed to procure a purchaser on specified terms, who produces a purchaser who enters into a tentative agreement with the owner as to the terms of sale, but who does not perform a condition precedent to the taking effect of the contract is not entitled to his commission. *See, also, Clark vs. Bonner,* 217 Mass. 201, 104 N.E. 494; 9 *C.J. Brokers* §90(b); *Walker, Real Estate Agency,* (2nd ed., 1922) §272.

Annotations on the matter of fulfillment of a condition in cases of this character may be found in 20 A.L.R. 289; 51 id. 1390, 1399, and 73 id. 926, 929.

The plaintiff insists, however, that the proposition for solution is simply this: If A agrees to loan money to B and C, then the broker must obtain the signature of both B and C before he has earned his commission, but if A agrees to loan money to B and C, and B agrees to procure the signature of C, then as to A and B there is nothing further that the broker must do; or, to put it in other words, once A and B have agreed and the duty of procuring the signature of C has been assumed by B, the broker has procured for A a party B, ready, willing and able to consummate upon his terms.

The court insists, however, that the situation is not as simple as that. It is true the lender, A, agrees to loan money to B, the defendant, and C, his wife, but it must be remembered that A definitely lays down the condition that he will not lend to B and C, the defendant and his wife, unless they agree that "said sum shall be evidenced by a negotiable promissory note signed by Joseph Dubitzky and Gertrude Dubitzky [B and C] as the co-makers, who shall be jointly and severally liable thereon...." Gertrude Dubitzky refused to sign the agreement, Exhibit A, which set out the terms and conditions upon which the loan would be made. The incorporation of these terms and conditions was insisted upon by the lender, and the letters, defendant's Exhibit 3, dated September 3, 1937, and defendant's Exhibit 4, dated October 2, 1937, from the lender's attorney to the then counsel for the defendant, stated that if the defendant's wife was unwilling to sign the agreement "her signature being a condition precedent to the advancement of the loan, it would appear that Mr. Joseloff would be under no obligation to advance the sum agreed, and the agreement would thereupon terminate in accordance with Paragraph (e) thereof."

In other words, the plaintiff produced a lender ready, willing and able to loan but upon his own terms. If the condition concerning the wife's signature was not met with, he was not ready and willing to lend the money desired.

The plaintiff did not, therefore, find a lender ready, willing and able to loan money to the defendant, and thus is not entitled to a commission.

The issues are found and judgment is, therefore, directed for the defendant.