**UNITED STATES ex rel. Harold D. ROGERS, Relator-Appellee,**

v.

**Mark S. RICHMOND, Warden, Respondent-Appellant.**

No. 59, Docket 24517.

United States Court of Appeals
Second Circuit.

Argued Jan. 9, 1958.

Decided Feb. 20, 1958.

On Petition for Rehearing
March 13, 1958.

Abraham S. Ullman, State's Atty. for New Haven County, New Haven, Conn., and Robert C. Zampano, East Haven, Conn. (Arthur T. Gorman, Asst. State's Atty., for New Haven County, New Haven, Conn., on the brief), for appellant.

Lawrence M. Dooley, Public Defender for New Haven County, New Haven, Conn., for relator-appellee.

Before HINCKS, LUMBARD and WATERMAN, Circuit Judges.

HINCKS, Circuit Judge.

■ The relator, Harold D. Rogers, was tried and convicted in the Connecticut Superior Court of murder, committed during the perpetration of a robbery. He was sentenced to death. The conviction was appealed on the ground that the trial judge, over objection, had improperly admitted two confessions introduced at the trial. A related claim of error concerned the denial of the right to counsel. The Supreme Court of Errors affirmed the conviction, one judge dissenting. State v. Rogers, 143 Conn. 167, 120 A.2d 409, certiorari denied 351 U.S. 952, 76 S.Ct. 850, 100 L.Ed. 1476.

The relator then sought a writ of *habeas corpus* from the United States District Court for the District of Connecticut. The District Judge issued the writ and, after holding hearings and making a new record as to the facts surrounding the origin of the two confessions, ordered the sentence vacated. United States ex rel. Rogers v. Cummings, D.C., 154 F. Supp. 663. The State obtained a certificate of probable cause from the District Judge, as required by 28 U.S.C.A. § 2253, and has taken the present appeal.

The State's argument is essentially twofold. While conceding the power of the District Court to reach *conclusions* on the issue of coercion different from those of the State court, the State asserts that the District Court lacked the power to conduct, or, at least, abused its discretion in conducting, a hearing *de novo* for the purpose of ascertaining basic evidentiary facts—when all of the fact questions (so the State contends) had been raised and decided in the State trial court and considered on appeal.

The State's second contention is that as a matter of law the facts as found by the State trial judge would not support a conclusion of law holding either of the

confessions to be inadmissible. For the reasons which we shall shortly state, we do not reach or pass upon this second contention.

But for the case of Cranor v. Gonzales, 9 Cir., 226 F.2d 83, certiorari denied 350 U.S. 935, 76 S.Ct. 307, 100 L.Ed. 816, which we shall presently show to be distinguishable, the instant case is the first *habeas corpus* proceeding since the leading case of Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469, in which the District Judge held a hearing *de novo* and the propriety of his doing so was challenged on appeal. For that reason we deem it important to set forth at some length our views as to the proper functions of a United States District Judge when he has ordered a writ of *habeas corpus* to issue.

In one of the three companion appeals in Brown v. Allen, supra, the Court considered whether the federal court might properly place complete reliance on the state record and much that was said there is applicable to the instant case. Both Justice Reed's opinion and Justice Frankfurter's concurring opinion speak for a majority in discussing the proper procedure to be followed in the District Court. Justice Reed indicates that where the record of the state trial affords "an adequate opportunity to weigh the sufficiency of the allegations and the evidence, and no unusual circumstances calling for a hearing are presented, a repetition of the trial is not required." 344 U. S. at page 463, 73 S.Ct. at page 411. This is immediately followed by the statement that "a trial *may* be had in the discretion of the federal court or judge hearing the new application."[1] Justice Frankfurter's opinion discussed the problem at considerable length and states that the District Judge "must take due account of the proceedings that are challenged by the application for a writ. All that has gone before is not to be ignored as irrelevant." 344 U.S. at page 500, 73 S.Ct. at page 443. And again, 344 U.S. at page 501, 73 S.Ct. at page 443, he

states that in *habeas corpus* proceedings, federal judges should "probe the federal question while drawing on available records of prior proceedings to guide them in doing so."

The statements just quoted assume that the state transcript is before the District Judge. However, in the instant proceeding such was not the case. Neither the relator nor the State presented a transcript of the relevant evidence in the State trial and the District Judge at no time called for such a record or considered it.

Justice Frankfurter's opinion in Brown v. Allen, supra, anticipated just this situation. At page 503, of 344 U.S. at page 444 of 73 S.Ct., he states:

"If the record of the State proceedings is not filed, the judge is required to decide, with due regard to efficiency in judicial administration, whether it is more desirable to call for the record or to hold a hearing. Ordinarily, where the issues are complex, it will be simpler to call for the record, certainly in the first instance. If the issues are simple, or if the record is called for and is found inadequate to show how the State court decided the relevant historical facts, the District Court shall use appropriate procedures, including a hearing if necessary, to decide the issues."

See also Justice Reed's opinion, 344 U.S. at page 464, 73 S.Ct. at page 411, footnote 19. Difficulty in obtaining a State court transcript was not present here for it is quite apparent that the parties, during the hearing before the District Judge, had copies of the State court transcript; indeed at one point the relator's counsel tore out certain pages of his copy of the transcript and presented them as an exhibit to the District Judge. Thus, although, at 344 U.S. page 504, 73 S.Ct. page 444, Justice Frankfurter indicates that it would be "unduly rigid" to require the District Judge to call for the State

[1] The emphasis we have supplied to call attention to language on which the relator greatly relies.

record in every case, we hold that in the case now before us the nature of the issues presented and proper regard for the delicate balance of federal-state relationships required the District Judge to obtain and examine the State proceedings at the outset of these proceedings.

The relator's reliance upon Cranor v. Gonzales, supra, is misplaced. In that case the relator had objected to the introduction of a confession at his trial in the State of Washington. Washington applied the so-called "New York" rule of confessions, see Stein v. People of State of New York, 346 U.S. 156, 73 S.Ct. 1077, 97 L.Ed. 1522, and since facts bearing on the voluntariness of the confession were in dispute, the trial judge let the confession and surrounding facts go to the jury, charging that if the jury found the confession to have been coerced the jury was to disregard it entirely.

In the ensuing federal *habeas corpus* proceedings the District Judge took evidence on the basis of which he found the confession to have been coerced. On appeal, the court of appeals, applying Fed. Rules Civ.Proc. rule 52(a), 28 U.S.C.A., affirmed, declaring that the new hearing below was proper.[2] The federal court of appeals did not expressly rely on a "vital flaw" or "unusual circumstances"— phrases used in the Brown v. Allen opinions—to uphold the hearing. But the facts did show what might properly be considered such a flaw. That is, the findings as to the voluntariness of the confession and as to guilt were merged in a single general verdict so that if in the State proceedings the jury had given effect to a confession it found to have been coerced, the relator could not possibly prove that fact in the subsequent *habeas*

corpus proceedings. See Note, 5 Duke B.J. 147. Thus, because there was no express finding as to the voluntariness of the confession in the state court, the federal court had no State finding to which it could have referred. The District Judge, therefore, was faced with two choices. He might have attempted to acquire a trial transcript of the state trial and make his findings from the raw evidence therein contained; or, he might have held a hearing *de novo*. In the circumstances of the Cranor case justice might more surely have been achieved by the latter procedure which permitted observation of the witnesses. For credibility was crucial—and had never been expressly determined before.

The essential distinction between Cranor and the instant case is obvious. Connecticut follows the so-called "orthodox" rule in testing the admissibility of confessions. State v. Guastamachio, 137 Conn. 179, 75 A.2d 429; State v. McCarthy, 133 Conn. 171, 49 A.2d 594, 3 Wigmore, Evidence § 861. Here, the trial judge in conformity with that rule held a hearing before trial, made express findings, and concluded that the confessions were each voluntary. Whether we shall adopt the Cranor rule is a decision which can be deferred until we are presented with a case in which a state court has invoked the so-called "New York" rule.[3] It is sufficient for present purposes merely to observe that Cranor does not hold that a federal court on *habeas corpus* may try *de novo* an issue of fact *which was expressly determined in the state trial.*

In the instant case, we must hold, the failure of the judge below to call for and consider the trial record or so much

---

2. In Stein v. People of State of New York, supra, the Supreme Court held that since quite apart from the confession there was ample evidence to convict, a conviction would not be reversed where the New York rule had been applied. In Cranor, the Court distinguishes Stein on the basis that Stein had reached the Supreme Court through the state courts on appeal from a conviction and not in a *habeas corpus* proceeding.

3. The value of the New York rule has been questioned by some writers, e. g., Meltzer, Involuntary Confessions, 21 U. Chi.L.Rev. 317. It has also been suggested that if the rule of Cranor shall be followed state courts, in order to protect convictions from reversal in subsequent federal *habeas corpus* proceedings, may abandon adherence to the so-called New York rule. 54 Mich.L.Rev. 856.

thereof as related to the admissibility of the confessions, requires us to vacate the order appealed from and remand.

However, the absence in the court below of an adequate state record, which makes it impossible for us to affirm the order below, also makes it impossible for us to determine at this stage what disposition should be made of the writ on the merits. To be sure, we have examined the record of appeal from the State trial court upon which the Connecticut Supreme Court of Errors affirmed the conviction. This record was marked as an exhibit for identification when it was offered on the motion for rehearing and the court below refused to receive or consider it. It contained the pleadings, the findings of the trial judge including those on the admissibility of the confessions, the charge to the jury and the exceptions thereto, and various parts of the transcript which were essential to the determination by the appellate court of the propriety of certain rulings made below. We can say that in our opinion nothing in this state record of appeal discloses such a "vital flaw" in the State court proceedings or any such "unusual circumstances," as those terms are used in Brown v. Allen,[4] as would warrant the federal court in holding a hearing *de novo* on the issue of the admissibility of the confessions. However, the state record of appeal did not contain a complete transcript of the evidence taken in the preliminary hearing before the trial judge on the admissibility of the confessions. Without such a transcript the appeal record did not of itself disclose whether the trial judge had made historical findings on all the relevant evidence. Only on an adequate state record can the District Court determine if a vital flaw exists which warrants correction by extrinsic evidence.

We conclude therefore, that on remand the judge below should take such steps as will assure him that he has in evidence not only the findings of the trial court as to the admissibility of the confessions but also the transcript of the preliminary hearing on which the trial findings were based. Unless the judge below shall find in the record thus before him material which he deems to constitute "vital flaws" and "unusual circumstances" within the meaning of Brown v. Allen, we hold that he should make the necessary constitutional determinations exclusively on the basis of the historical facts as found by the State trial court. Brown v. Allen, 344 U.S. at pages 507–508, 73 S. Ct. at page 446.

To be sure, in Brown v. Allen it was said that in the absence of a vital flaw or of unusual circumstances the federal judge "may" rely on the state record. From this, the relator urges that the federal judge "may" also retry disputed issues *de novo*. In effect, the argument is that in a given situation either procedure is equally available irrespective of other factors. We do not agree. Brown v. Allen and many other federal cases recognize that serious federal-state tensions may spring from federal review of the constitutional incidents of state judicial proceedings. In Brown v. Allen, the problem was whether it was proper for the federal court to rely on state court findings. That power was recognized subject to the limitations stated. Here the problem is whether it was proper for the federal court *not* to accept state court findings. We think that the Brown v. Allen opinion as a whole and the expressed concern of the Court for federal-state relations require a holding that subject to the same limitations the federal court should accept the State court findings.

4. At 344 U.S. page 506, 73 S.Ct. page 446, Justice Frankfurter said:
"When the record of the State court proceedings is before the court, it may appear that the issue turns on basic facts and that the facts (in the sense of a recital of external events and the credibili-

ty of their narrators) have been tried and adjudicated against the applicant. Unless a vital flaw be found in the process of ascertaining such facts in the State court, the District Judge may accept their determination in the State proceeding * * *."

Vacated and remanded for further proceedings in accordance with this opinion.

On Petition for Rehearing

PER CURIAM.

Relator, through a petition for rehearing, has requested that we clarify our earlier opinion in this case in two respects.

Relator's first request concerns the following sentence in our opinion: "Unless the judge below shall find in the record thus before him material which he deems to constitute 'vital flaws' and 'unusual circumstances' within the meaning of Brown v. Allen, we hold that he should make the necessary constitutional determinations exclusively on the basis of the historical facts as found by the State trial court." He argues that this holding is contrary to Brown v. Allen, 344 U.S. 443, at page 478, 73 S.Ct. 397, at page 418, 97 L.Ed. 469, where Justice Reed indicated that in one of the constituent cases there under consideration "[t]he District Court heard all additional evidence the petitioner offered. This was in its discretion." We think that by "additional" evidence, the opinion meant evidence material on the constitutional issue which the state trial court had excluded or as to which it had made no finding. To hold that by this dictum the Supreme Court meant to sanction unlimited discretion in the federal court on *habeas corpus* to take all evidence that the relator had already presented or could have presented in his trial, would be inconsistent with the rationale of Brown v. Allen.

Relator's second request is that we clarify our opinion so as to indicate that we did not wholly preclude the Judge below from finding a vital flaw in the state proceedings. Relator specifically refers to our sentence stating: "We can say that in our opinion nothing in this state record of appeal discloses such a 'vital flaw' in the State court proceedings or any such 'unusual circumstances,' as those terms are used in Brown v. Allen, as would warrant the federal court in holding a hearing *de novo* on the issue of the admissibility of the confessions." As the sentence shows, we limited our observation to the "state record on appeal." Nothing was said to insulate so much of the state trial record as was not included in the record of appeal from examination for possible flaws.

In no respect do we deviate from our original opinion.

Petition denied.